IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MELODIE PINNER,<br><br>        Plaintiff,<br>  v.<br><br>COLETTE PETERS; HEIDI STEWART;<br>OREGON DEPARTMENT OF CORRECTIONS;<br>TONY KLEIN; and PAULA MYERS,[1]<br><br>        Defendants. | Case No.: 3:24-cv-01148-AN<br><br><br>OPINION AND ORDER |

      Plaintiff Melodie Pinner brings this action against defendants Colette Peters, Heidi Stewart, Oregon Department of Corrections ("ODOC"), Tony Klein, and Paula Myers. Plaintiff brings three civil rights claims under 42 U.S.C. § 1983, for (1) cruel and unusual punishment in violation of the Eighth Amendment; (2) failure to supervise; and (3) failure to provide adequate medical care. Defendants move to dismiss plaintiff's action in its entirety for failure to state a claim. For the reasons stated herein, defendants' motion to dismiss is granted, and plaintiff's complaint is dismissed.

## LEGAL STANDARD

      A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l*

---

[1] Several of defendants' names are misspelled on the docket. The Court uses the proper spelling in this Opinion and Order, as provided in defendants' filings. *See* Defs. Mot. to Dismiss, ECF 58, at 1. The Court does not, however, include Rob Persson as a named defendant (who appears to be referenced in his role as Paula Myers' predecessor, *see* 1st Am. Compl., ECF 52, ¶ 27), because Persson is not named as a defendant in the caption of either the initial or first amended complaints, *see* Compl., ECF 6; 1st Am. Compl.

*Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The court must draw all reasonable inferences from the factual allegations in the plaintiff's favor.  *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008).  The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, courts may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice[,]" as well as "a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## BACKGROUND

**A.     Factual Allegations**

In the operative complaint, plaintiff alleges the following facts.  Plaintiff was formerly incarcerated at Coffee Creek Correctional Facility ("Coffee Creek").  1st Am. Compl., ECF 52, ¶ 10.  During her incarceration, plaintiff was sexually assaulted by Klein, a nurse employed at Coffee Creek, on two separate occasions. *Id.* ¶¶ 19-21.  The first time, on or about October 26, 2017, Klein called plaintiff to the medical clinic for an electrocardiogram test. *Id.* ¶ 19.  During the procedure, Klein "sexually assaulted Plaintiff by placing his hands under her shorts and penetrating her vagina with his fingers." *Id.* ¶ 20.  Some days

thereafter, plaintiff returned to the medical clinic for a follow-up visit, where Klein sexually assaulted her a second time, this time by "put[ting] his hands under Plaintiff's shirt and touch[ing] her breasts." *Id.* ¶ 21.

Plaintiff "was upset" by these events, "but was embarrassed . . . and feared reporting the contact because she did not think she would be believed." *Id.* ¶ 22. She did not know that Klein had assaulted other female adults in custody ("AICs"); that other female AICs had made reports of sexual abuse against Klein; or that despite the reports, Klein was still left alone with female AICs. *Id.*

Some time later, plaintiff was assaulted by another AIC. *Id.* ¶ 23. Thereafter, plaintiff reported both this assault and the assaults by Klein to Coffee Creek's Prison Rape Elimination Act manager. *Id.* Plaintiff believes the information was reported to the Oregon State Police ("OSP"), because two OSP officers then interviewed plaintiff about the assaults by Klein. *Id.* ¶ 24. The officers "told [p]laintiff that they thought she was lying and intimidated her by asking things such as why she would want to ruin [Klein's] career and family." *Id.* Plaintiff understands that following this interview, no other investigatory efforts were undertaken, no disciplinary action was taken related to the assaults by Klein, and Klein continued to work as a nurse at Coffee Creek until January of 2018. *Id.* ¶ 25.

After she reported the assaults by Klein, plaintiff sought and received counseling from a rape crisis center. *Id.* ¶ 26. After three visits, however, plaintiff's counseling services were terminated. *Id.* Thereafter, plaintiff did not receive any further counseling with the center. *Id.* When plaintiff's counseling services were terminated, "Myer told Plaintiff that there was nothing ODOC could do to help her." *Id.* ¶ 27. Plaintiff was also instructed at this time "not [to] speak to anyone about" the assaults by Klein. *Id.* Plaintiff "learned while incarcerated that failing to follow staff directives may result in discipline," and she generally "suffered from trauma, anxiety and fear of retribution if she spoke about the incident[.]" *Id.* ¶¶ 27-28. Plaintiff filed grievances around this time "and sent correspondence to [] Peters and Stewart but never received a response[.]" *Id.* ¶ 27.

Plaintiff then began seeing another counselor, assigned by Coffee Creek, "but was directed by [Coffee Creek] staff that she could not discuss what happened with [Klein] with the new counselor, only

3

her feelings." *Id.* ¶ 29.[2] "[T]he directive to not talk about the facts of [Klein's] abuse was never rescinded." *Id.* Then, in March of 2020, "outside contractors were not permitted into [Coffee Creek] and, on information and belief, Plaintiff was given additional prescriptions for her trauma and mental condition." *Id.* During her incarceration, "Plaintiff did not know that she could file suit over the assault because of the directive she received about discussing the assault[.]" *Id.* ¶ 30.

In October of 2020, plaintiff was released from Coffee Creek. *Id.* ¶ 28. Thereafter, plaintiff "discontinued taking lithium, zoloft and resperadal and her mental faculties began returning to normal." *Id.* ¶ 30.[3] At the same time, however, "she also started reliving the [sexual assaults by Klein,] causing her to relapse into abuse of controlled substances" around November 2020. *Id.* "[O]ther than approximately a month in October 2020-November 2020," plaintiff lacked mental competency to bring suit "due to the trauma, various prescription drugs and later relapse," as well as the directive she received from Coffee Creek staff members forbidding her from discussing the facts of her assault by Klein. *Id.* ¶¶ 31-32. She continued to believe she was prohibited from discussing the facts of the assault until at least March of 2023. *Id.* ¶ 32.

In November of 2023, plaintiff discovered that Klein had sexually assaulted at least three other women incarcerated at Coffee Creek before assaulting plaintiff. *Id.* ¶ 32. Plaintiff states she "could not have reasonably discovered" this until November of 2023. *Id.* Based on "the[se] tolling events . . . and [plaintiff's] discovery of the failure to supervise" Klein, plaintiff asserts that her action was timely filed. *Id.* ¶ 33.

**B.    Procedural History**

Plaintiff filed the complaint in this action in the District of Nevada in June of 2024. *See* Mot. for Leave to Proceed In Forma Pauperis, ECF 1. In July of 2024, the case was transferred to this district and

---

[2] The first amended complaint includes two paragraph 29s and two paragraph 30s. The citations in this paragraph of the Court's Opinion and Order are to the first paragraphs 29 and 30, located at lines 9-20 of page seven of the first amended complaint.

[3] This citation is to the second paragraph 30, located at lines 1-5 of page eight.

assigned to this Court. *See* Order of July 10, 2024, ECF 3; Notice of Case Assignment, ECF 5. Plaintiff initially proceeded pro se and in forma pauperis, *see* Order of July 31, 2024, ECF 9, but then moved for and was eventually appointed pro bono counsel, *see* Pro Bono Appt. Resp., ECF 42.

On January 31, 2025, plaintiff filed the first amended complaint, which is the operative complaint in this action. Based on the factual allegations described above, the operative complaint asserts three claims under 42 U.S.C. § 1983, for (1) violation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment; (2) failure to supervise; and (3) failure to provide adequate medical care.

On June 9, 2025, defendants moved to dismiss plaintiff's complaint as untimely under the applicable two-year statute of limitations. Defs. Mot. to Dismiss ("Defs. Mot."), ECF 58. Defendants' motion to dismiss is now pending before this Court.

## DISCUSSION

Plaintiff's action is barred by the applicable statute of limitations. To begin, "Oregon's two-year statute of limitations for personal injury actions applies to actions under [Section] 1983." *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989); *see, e.g.*, *Owens v. Okure*, 488 U.S. 235, 240 (1989) (explaining that Section 1983 does not contain its own statute of limitations and, as such, courts must apply to Section 1983 claims the "most analogous state statute of limitations"); *see also Kruesi v. Oregon Dep't of Corr.*, No. 6:25-cv-00434-AA, 2025 WL 1897872, at *2 (D. Or. July 9, 2025) (explaining that the "two-year statute of limitations from Oregon's general personal injury statute" applies to Section 1983 claims involving sexual assault). Thus, to be timely, plaintiff must have filed suit within two years of the date the limitations period began. To "determine[] when the state limitations period begins for a claim under [Section 1983]," courts apply federal law. *Norco Constr., Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir. 1986).

A.  **Cruel and Unusual Punishment**

The Court first considers plaintiff's claim for cruel and unusual punishment. At first glance, the accrual date for this claim would appear to be two years from October 2017, when the sexual assaults, and relatedly, plaintiff's injury, occurred. However, there is a wrinkle to this analysis. Plaintiff's claims are

5

subject to the Prison Litigation Reform Act's ("PLRA") exhaustion requirement, which "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). As such, "the applicable statute of limitations [is] tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) (collecting cases). Here, plaintiff alleges that she filed grievances and sent correspondence to Peters and Stewart, all without response, but she does not allege when she filed those grievances. *See* 1st Am. Compl. ¶ 27. Regardless, it is clear from the first amended complaint that she filed those grievances while incarcerated. *See id.* As such, by the time of her release from Coffee Creek in October of 2020, there can be no doubt that the statute of limitations on plaintiff's first claim had begun to run, and by October of 2022, had passed. Plaintiff's first claim was therefore brought after the statute of limitations had expired.

Plaintiff does not dispute this but argues that her claim should nonetheless be considered timely under the doctrine of equitable tolling. Pl. Resp., ECF 65, at 8. In Section 1983 actions, courts analyze issues of tolling, including equitable tolling, by applying "the forum state's law . . . , except to the extent [that it] . . . is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). This Court therefore looks to Oregon law regarding equitable tolling.

    1.    *Equitable Tolling Under Oregon Law*

"Equitable tolling is used sparingly in Oregon." *Allen v. Nw. Permanente, P.C.*, No. 3:12-cv-0402-ST, 2013 WL 865967, at *6 (D. Or. Jan. 2, 2013), *report and recommendation adopted as modified*, 2013 WL 865973 (D. Or. Mar. 7, 2013), *aff'd sub nom. Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016). Though the Oregon Supreme Court has "stated that various circumstances can toll a statute of limitations' expiration," it "did not explain what those 'various circumstances' were." *Monical v. Marion County*, No. 6:18-cv-103-YY, 2021 WL 228891, at *4 (D. Or. Jan. 22, 2021) (cleaned up) (quoting *Shasta View Irrigation Dist. v. Amoco Chems. Corp.*, 329 Or. 151, 162, 986 P.2d 536 (1999)). As relevant here, it is not entirely clear to what extent Oregon law allows for equitable tolling in Section 1983 actions. Oregon's appellate and supreme courts do not appear to have squarely addressed the issue, and

6

persuasive authority from this District is contradictory on the matter. *Compare Monical*, 2021 WL 228891, at *3-5 (applying equitable tolling doctrine to toll statute of limitations in Section 1983 action following review of Oregon case law, persuasive authority from the District of Oregon, and Ninth Circuit authority), *with Reynolds v. Giusto*, No. CV. 08-6261-PK, 2009 WL 2523727, at *3 (D. Or. Aug. 18, 2009) (declining to apply equitable tolling where the "Plaintiff cite[d] no authority, and [the court was] aware of none, suggesting that federal courts in Oregon may apply equitable tolling to § 1983 cases"), *and D.H.M. v. Or. Youth Auth.*, No. 06-143-KI, 2008 WL 1766727, at *5 (D. Or. Apr. 8, 2008) (declining to apply equitable tolling to Section 1983 claim where the court "ha[d] no precedent showing that equitable tolling could apply to [such] claims under any circumstances"). Regardless, the Court need not reach the issue here because even assuming that equitable tolling is permissible in a Section 1983 action, plaintiff has not met the high burden required to justify application of that doctrine.

As noted, Oregon courts do not appear to have articulated a test for the application of equitable tolling. *See Monical*, 2021 WL 228891, at *4 (describing inability to locate any Oregon case that states "a test for the application of equitable tolling"). The Court finds that it is likely the Oregon Supreme Court would apply "the general equitable tolling test" used by the "Supreme Court, Ninth Circuit, and other jurisdictions." *Id.* at *3-4 ("The Court must determine how the Oregon Supreme Court likely would rule if determining whether equitable tolling would apply under the circumstances of this case."). Under the general equitable tolling test, a plaintiff must show that (1) they have "been pursuing [their] rights diligently" and (2) "some extraordinary circumstance stood in [their] way." *Id.* at *4; *see also, e.g.*, *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "The first element requires the effort that a reasonable person might be expected to deliver under [their] particular circumstances and asks whether the plaintiff was without any fault in pursuing [their] claim," and "[t]he second element requires the litigant to show that extraordinary circumstances were the cause of [their] untimeliness and made it impossible to file the document on time." *United States v. Booth*, 914 F.3d 1199, 1207 (9th Cir. 2019) (cleaned up). "'Whether a particular untimely claim may be excused for a particular reason varies with the reason.'" *Id.* (quoting *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1051 (9th Cir. 2013) (en banc)).

Here, plaintiff alleges that her late filing was caused by mental impairment and that her claims should be tolled accordingly. More specifically, she alleges that the trauma she endured, the medications ODOC prescribed her, her relapse into substance abuse, and her fear of retribution together prevented her from timely filing her complaint. 1st Am. Compl. ¶¶ 28-32. As pleaded, these allegations are insufficient.

2.     *Equitable Tolling on the Basis of Mental Impairment*

As a preliminary matter, the Ninth Circuit has recognized the possibility of "equitable tolling due to mental impairment" in certain circumstances. *Bills v. Clark*, 628 F.3d 1092, 1099 (9th Cir. 2010) (considering equitable tolling of deadline to file habeas petition); *accord Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011) (considering equitable tolling of deadline to file charge of discrimination with Equal Employment Opportunity Commission); *accord Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (considering equitable tolling of deadline to file complaint in Title VII action). Two lines of cases have considered this eligibility: both in the habeas context, *see, e.g.*, *Bills*, 628 F.3d at 1099-1100; and the non-habeas context, *see, e.g.*, *Stoll*, 165 F.3d at 1242. In habeas cases, a plaintiff seeking to avail themselves of equitable tolling based on mental impairment must show (1) the "impairment was so severe that either (a) [the] plaintiff was unable rationally or factually to personally understand the need to timely file, or (b) [the] plaintiff's mental state rendered [her] unable personally to prepare a complaint and effectuate its filing"; and (2) "diligence in pursuing the claims to the extent [she] could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances." *Johnson*, 653 F.3d at 1010 (cleaned up).

In non-habeas cases, "[e]quitable tolling of the statute of limitations applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll*, 165 F.3d at 1242 (applying equitable tolling based on mental impairment where the defendants' actions left the plaintiff "severely impaired and unable to function in many respects"; caused the plaintiff to attempt suicide multiple times; and made her "unable to read, open mail, or function in society"). Claims have also been tolled where the defendant's conduct caused the plaintiff psychological damage that, when considered together

8

with the plaintiff's unique circumstances, prevented the plaintiff from pursuing their case. *See Equal Emp. Opportunity Comm'n v. Willamette Tree Wholesale, Inc.*, No. CV 09-690-PK, 2011 WL 886402, at *8 (D. Or. Mar. 14, 2011) (finding the "evidence of psychological damage suffered by [the plaintiff] in consequence of the sexual assaults she suffered" at the defendant's workplace, as well as "repeated threats" made by the defendant's employee "to harm [the plaintiff] and her family should she disclose the sexual assaults to anyone, as well as the undisputed evidence that [the plaintiff] was at all material times a monolingual, illiterate Spanish speaker unrepresented by legal counsel," was together "sufficient to establish the elements of equitable tolling under *Stoll*).

Ultimately, although the habeas and non-habeas equitable tolling tests differ, they "effectively recite the same standard." *Mathias v. HomeStreet Bank, Inc.*, No. CV 21-00154 JMS-RT, 2021 WL 4484549, at *7 (D. Haw. Sept. 29, 2021) (citing *Milam v. Harrington*, 953 F.3d 1128, 1133 (9th Cir. 2020)). And that standard is high—demanding extraordinary circumstances and impossibility. *See Bills*, 628 F.3d at 1199 ("[A]ny standard for equitable tolling due to mental impairment must evaluate whether the petitioner's condition made it *impossible* to comply with the filing deadline." (emphasis added)). However, it does not demand "literal impossibility." *Forbess v. Franke*, 749 F.3d 837, 841 (9th Cir. 2014). Impossibility is instead demonstrated where the mental impairment is "a but-for cause of any delay." *Id.* (quoting *Bills*, 628 F.3d at 1093); *see Milam v. Harrington*, 953 F.3d 1128, 1132 (9th Cir. 2020) ("Equitable tolling for a mental impairment does not require a literal impossibility, but instead only a showing that the mental impairment was a but-for cause of any delay." (cleaned up)).

Considering the totality of the circumstances, plaintiff's allegations do not show that her incapacitation was a but-for cause in her delay. Most blatantly, plaintiff does not explain why her mental impairment caused her to delay filing her complaint but did not also prevent her from filing grievances and a tort claim notice. She alleges that she was only capable of pursuing her case for "approximately a month in October 2020-November 2020," but does not offer further allegations explaining why this is so. 1st Am. Compl. ¶ 31. Without more, the Court cannot conclude that plaintiff was incapable of timely filing her complaint.

9

Plaintiff's additional allegations—regarding her trauma, medication use, relapse, and fear of retribution—are also not sufficient to justify tolling. To be sure, plaintiff does allege that defendants caused her trauma and, drawing all inferences in her favor, that they were responsible for prescribing her mind-altering medications including lithium and resperadol. *See id.* ¶¶ 10, 20, 28. She also alleges that the trauma she suffered led to her relapse. *Id.* ¶ 30. These allegations certainly show that plaintiff was suffering and impaired, but they do not show that plaintiff "was completely psychiatrically disabled during the relevant limitation period." *Stoll*, 165 F.3d at 1242. At least one court within this District has found equitable tolling at a lower threshold. *See Willamette Tree Wholesale, Inc.*, 2011 WL 886402, at *7. But in that case, the plaintiff presented evidence "regarding the psychological effects of the repeated workplace rapes [she] suffered, including severe depression, post-traumatic stress, suicidal ideation, social isolation and panic attacks, [all] exacerbated by any reminder of the sexual assaults, including being called upon to report or describe her experiences." *Id.* at *8. Plaintiff's allegations here do not describe with similar detail how her mental incapacitation prevented her from timely filing her complaint. Moreover, the court considered that evidence "together with the evidence of [the defendant's employee's] repeated threats to harm [the plaintiff] and her family should she disclose the sexual assaults," as well as the evidence that the plaintiff was "a monolingual, illiterate Spanish speaker unrepresented by legal counsel," to find that the "psychological damage suffered by [the plaintiff] in consequence of the sexual assaults she suffered in [the defendant's] workplace [was] sufficient to establish the elements of equitable tolling under *Stoll*." *Id.* Here, plaintiff presents far fewer allegations explaining her delay.

Outside of the direct impairment, plaintiff primarily alleges that defendants delayed her ability to file because they directed her to remain silent and caused her to fear retribution. The Court accepts as true that plaintiff received these directives and experienced this fear, and the Court does not doubt that these factors posed hurdles to plaintiff. Plaintiff does not allege, however, that she or her family were threatened or explain why she was temporarily free of these burdens for a month in October or November 2020. The Court does not take lightly the hardships that plaintiff has faced as a result of the conduct alleged in this case. Nonetheless, plaintiff faces a demanding standard. *See, e.g.*, *Miranda v. Castro*, 292 F.3d 1063, 1066

10

(9th Cir. 2002) (citations and quotation marks omitted) ("[E]quitable tolling is unavailable in most cases and is appropriate only if extraordinary circumstances . . . make it impossible to file a petition on time."). And plaintiff's allegations here fall short. For all these reasons, plaintiff cannot avail herself of the equitable tolling doctrine in this case, and her first claim, for cruel and unusual punishment, is barred by the applicable statute of limitations.

B.     **Failure to Supervise**

The Court next considers plaintiff's second claim, for failure to supervise. The analysis of this claim tracks closely to that of claim one and is thus dependent on whether her claim was timely. However, plaintiff argues that the statute of limitations on this claim should accrue at a later date under the discovery rule. The Court disagrees.

"Under federal law, the 'discovery rule' typically governs the accrual of [Section] 1983 claims so that 'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)); *see, e.g.*, *St. Clair v. County of Okanogan*, 154 F.4th 1154, 1159 (9th Cir. 2025) ("[A] Section 1983 claim accrues 'not just when the plaintiff experiences the injury, but when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'" (quoting *Bonneau v. Centennial Sch. Dist. Co. 28J*, 666 F.3d 577, 581 (9th Cir. 2012))). While the discovery rule "incorporates 'some flexibility'" into the claim accrual analysis, *St. Clair*, 154 F.4th at 1159-60, it also requires the plaintiff to be "diligent in discovering the critical facts of the case," *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017); *see Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) ("There is a twist to the discovery rule: The plaintiff must be diligent in discovering the critical facts."). The Ninth Circuit has indicated that the thrust behind the discovery rule is the recognition that "trauma is like silica dust in the lungs, lurking 'unknown and inherently unknowable' until symptoms manifest and their cause is realized." *St. Clair*, 154 F.4th at 1159.

Plaintiff acknowledges that her "immediate injury" was the sexual assaults by Klein. Pl. Resp. 9. However, plaintiff argues that the discovery rule considers more: it also asks when a plaintiff learned of the

11

*cause* of their injury, and here, plaintiff did not learn that Klein had assaulted other women until November 2023 and thus did not know until that time that Klein's supervisors' "failure to supervise may have also been a cause of her injury." *Id.* Plaintiff's argument is not well-taken. While it is true that the discovery rule considers when a plaintiff knows of the cause of their injury, it also asks when a plaintiff *has reason to know* of the cause of their injury. *See, e.g.*, *Bonneau*, 666 F.3d at 581. Three cases are particularly illustrative.

First, in *Bonneau*, the plaintiff alleged that he was beaten by teachers in elementary school. *Id.* at 578. At age thirty-four, the plaintiff brought suit against the teachers, then-school principal, and school district. *Id.* at 579. The plaintiff argued that the accrual date for his claims should be delayed based on the fact that "he repressed memories of the beatings." *Id.* at 581. The Ninth Circuit disagreed, citing the discovery rule and holding that the plaintiff "was aware of the injuries he experienced as a child as well as their causes at the time of the beatings." *Id.* Specifically, the court reasoned that the plaintiff "immediately confided in other teachers and his parents, and he allege[d] no other injuries whose cause he belatedly discovered can be traced to the alleged abuse." *Id.*

Second, in *Plumeau v. School District No. 40 County of Yamhill*, 130 F.3d 432, 434-35 (9th Cir. 1997), the minor plaintiff was sexually abused in grade school by the school janitor from 1984 to 1987. In 1987, the janitor was convicted on charges of sexual abuse related to his abuse of other children. *Id.* at 435. In 1992, the minor plaintiff attempted suicide and, shortly thereafter, "disclosed for the first time that she had been sexually abused by [the janitor]." *Id.* The janitor was then convicted and sentenced for abusing the minor plaintiff. *Id.* At sentencing, a Victims' Assistance Worker from the county district attorney's office informed the minor plaintiff's mother "that she believed that [the principal] was responsible for what had happened to [the minor plaintiff] and the other students." *Id.* The minor plaintiff, by and through her family, then filed suit in federal court, alleging, in relevant part, a Section 1983 claim based on the school district's failure to supervise. *Id.* In determining whether the minor plaintiff's tort claim notice was timely, the Ninth Circuit rejected the minor plaintiff's theory that her claim began to accrue the date of the janitor's sentencing because that is when the minor plaintiff "discovered that the [s]chool [d]istrict may possibly

12

have been responsible for [the janitor]'s actions." *Id.* at 437. The court reasoned that even before the sentencing, the minor plaintiff "knew the abuse took place during school hours and on school property and that the abuser was a school district employee," and that "these facts were sufficient to apprise [the minor plaintiff] of [her] potential claims against the district for failure to supervise." *Id.*

Third, in *V.T. v. City of Medford*, No. 1:09-cv-03007-PA, 2015 WL 300270, at *1 (D. Or. Jan. 22, 2015), the plaintiff was sexually assaulted by police officers in 1981. The plaintiff disclosed the abuse for the first time to a mental health counselor in 2007; filed a tort claim notice in 2008; and then filed suit against the defendants. *Id.* In relevant part, the plaintiff's suit included a Section 1983 claim against the city, which the defendants moved to dismiss as time-barred. *Id.* at *2. The plaintiff argued that the accrual date should be delayed based on the fact "that he did not discover his psychological injuries until later." *Id.* at *3. The court found the plaintiff's claim to be time-barred, reasoning that the plaintiff "was aware of the injury," including that it "occurred while in police custody at a police facility" and "was committed by two [] police officers," at the time the sexual assault took place. *Id.* Based on these facts, the court concluded that the "[p]laintiff knew, or in the exercise of reasonable diligence should have known, of the potential that the [city] was involved." *Id.*

Application of *Bonneau*, *Plumeau*, and *V.T.* requires a finding that plaintiff's claims are time-barred. Plaintiff's allegations make clear that she knew of her immediate injury when it occurred, including that it occurred during her incarceration at Coffee Creek, and was committed by Klein, a Coffee Creek and ODOC employee. Plaintiff alleges she reported the sexual assaults, as well as filed grievances and a tort claim notice and sent correspondence regarding the sexual assaults, all while incarcerated. Like the plaintiff in *Bonneau*, plaintiff here does not identify any other injury upon which the claim accrual analysis should be based, and the Court sees none. Like the plaintiff's arguments in *Plumeau*, plaintiff's arguments regarding subsequently gleaned information are not enough: at the time of her injury, plaintiff was aware of facts "sufficient to apprise [her] of [her] potential claims against [Klein's supervisors] for failure to supervise." 130 F.3d at 437. And like the plaintiff in *V.T.*, plaintiff here "knew, or in the exercise of reasonable diligence should have known, of the potential that [Klein's supervisors were] involved." 2015

13

WL 300270, at *3.

As with plaintiff's first claim, plaintiff's injury occurred in late October 2017, and the date of accrual was tolled pending plaintiff's pursuit of the mandatory exhaustion process. *See Valoff*, 422 F.3d at 943 (collecting cases). The statute of limitations on plaintiff's second claim had thus begun to run by no later than October of 2020 and had passed by no later than October of 2022. As such, the Court must conclude that plaintiff's second claim is also time-barred.[4]

## C. Inadequate Medical Care

Finally, the Court considers plaintiff's claim for inadequate medical care. A claim for inadequate medical care arises when an AIC experiences "'deliberate indifference' to [their] 'serious medical needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In such cases, the "injury" is the deliberate indifference, and the claim is said to accrue when the AIC "knew or had reason to know of the [prison] employees' deliberate indifference to [the AIC's] [serious] medical needs." *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999); *see Actkinson v. Vargo*, 284 Fed. App'x 469, 471 (9th Cir. 2008). "The proper focus is upon the time of the [] acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979).

Plaintiff's claim for inadequate medical care is also time-barred. With regard to this claim, plaintiff points to the termination of her counseling with the rape crisis center after only two visits, the lack of response or change in plaintiff's treatment following her grievances and correspondence, and the directives plaintiff received not to discuss the sexual assaults by Klein. 1st Am. Compl. ¶¶ 44(1), 44(2).[5] Much like the analysis regarding plaintiff's mandatory exhaustion of administrative remedies, the exact dates of these events are not clear but ultimately do not matter. Plaintiff's allegations make clear that these events—

---

[4] Plaintiff also argues that if the discovery rule does not make her second claim timely, application of the doctrine of equitable tolling should. Because the Court has already found that plaintiff cannot avail herself of the equitable tolling doctrine on the facts alleged, the Court does not further address this argument here.

[5] The first amended complaint contains two paragraph 44s. This citation refers to both.

14

including the termination of counseling services, filing of grievances and sending of correspondence without response or change in treatment, and the directives—all occurred during plaintiff's incarceration. Thus, the claim accrual date cannot be later than the date of her release in October of 2020, and the statute of limitations on plaintiff's third claim would also have run no later than October of 2022. As such, plaintiff's third claim is also time-barred.

Plaintiff's remaining arguments are repetitive of those already addressed, including that her third claim is saved by application of the discovery rule and the doctrine of equitable tolling. For all the reasons already described, the Court remains unpersuaded by these arguments.

## CONCLUSION

For the reasons stated herein, defendants' motion to dismiss, ECF 58, is GRANTED, and this action is DISMISSED without prejudice and with leave to amend. Though the Court is skeptical that plaintiff could allege facts sufficient to invoke the doctrine of equitable tolling, in an abundance of caution, the Court grants plaintiff thirty (30) days from the date of this Opinion and Order to file a second amended complaint curing the deficiencies outlined herein. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."). Plaintiff is advised that should she choose to file a second amended complaint, she may not add new claims or parties without first seeking leave of the Court.

IT IS SO ORDERED.

DATED this 4th day of March, 2026.

*Adrienne Nelson*
Adrienne Nelson
United States District Judge